**In the Interest of A.P.S. and A.M.S., Children.**

**No. 06–00–00167–CV.**

Court of Appeals of Texas, Texarkana.

Submitted Aug. 1, 2001.

Decided Aug. 16, 2001.

---

J. Stephen Walker, The Moore Law Firm, LLP, Paris, for appellant.

Dianne M. Sprague, Clarksville, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Shannon Silva appeals the trial court's modification of the custody of her two daughters. Under the previous order, both Shannon and the children's father, Tracy Silva, were named as joint managing conservators. In the modification order, Tracy is named as the sole managing conservator and Shannon is appointed possessory conservator, with possession of the children "at reassonable [sic] times and places as determined by Tracy Shane Silva."

In three points of error, Shannon contends that the trial court abused its discretion by modifying the custody arrangement, that the trial court's failure to award her standard visitation was based on insufficient evidence, and that the trial court's modified custody order effectively denied her access to the children.

Shannon and Tracy were divorced in November 1999. The divorce decree named the parties as joint managing conservators of their two young girls, with Shannon having the right to determine the children's residence. Tracy was given visitation under a standard possession order. Shannon and the two girls resided with Shannon's parents in Georgia, but in March 2000 she brought the girls to Texas. While the girls were in Texas, Tracy filed a petition to modify the parent-child relationship, asking the court to appoint him as sole managing conservator of the children. He also asked for a temporary restraining order against Shannon, denying her access to the girls. The trial court granted this restraining order. After a hearing on the merits of Tracy's petition to modify, the trial court appointed Tracy sole managing conservator and Shannon possessory conservator.

In her first point of error, Shannon contends the trial court abused its discretion by modifying the custody arrangement from a joint managing conservatorship to a sole managing conservatorship. A court may replace a joint managing conservatorship with a sole managing conservatorship if "the child's present living environment may endanger the child's physical health or significantly impair the child's emotional development … and … the appointment of a sole managing conservator would be a positive improvement for and in the best interest of the child." TEX. FAM.CODE ANN. § 156.203 (Vernon 1996). We review the trial court's modification of a joint managing conservatorship under an abuse of discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982); *In re Moss*, 887 S.W.2d 186, 188 (Tex.App.—Texarkana 1994, no writ). A trial court abuses its discretion if it acts arbitrarily and unreasonably or without reference to guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985). In our review of modification under an abuse of discretion standard, legal and factual sufficiency are not independent grounds of error, but are relevant factors in deciding whether the trial court abused its discretion. *In re Marriage of Driver*, 895 S.W.2d 875, 877 (Tex.App.—Texarkana 1995, no writ).

At the custody hearing, testimony revealed that the two girls had lived with their mother and her parents in Georgia since the divorce. Shannon brought the girls to Texas in March 2000, and events that occurred while they were in Texas prompted Tracy to petition the court to modify the custody agreement. The trial court heard testimony from Tracy, Shannon, many family members, a police officer, and a schoolteacher.

According to Shannon's testimony, she brought the girls to Texas in March 2000 to visit their father. One evening, after she and the girls were forced to leave the motel where they were staying, they went to Tracy's parents' house. Tracy's parents were not home, but Tracy's brother's wife, Pam Silva, was there. Later in the evening, Tracy came to the house. According to Shannon, Tracy had been drinking and the two of them got into a heated argument during which he struck her across the left side of her face, hit her on the forehead, and shoved her to the ground. Shannon waited until Tracy left and then called the police and filed charges against him. The next day Shannon called Tracy and told him that she wanted to work through the problems that had occurred the day before and that she wanted to drop the charges against him. Tracy and his parents met Shannon and the girls at a restaurant. At this meeting, Tracy told Shannon he wanted the girls and forcibly took them from Shannon. He also took a file from Shannon containing the girls' birth certificates and medical records. Shannon then returned to Georgia.

Tracy's testimony concerning these events presents a striking contrast to Shannon's testimony. Tracy testified that he went to his parents' house the night of the altercation to pick up the girls and take them shopping for clothes because Shannon had brought them to Texas with only the clothes they were wearing. On arrival, he found that Shannon smelled of alcohol and was drunk. According to Tracy, Shannon reacted violently to his presence and began screaming obscenities at him in front of the girls. One of the girls attempted to leave the house to go with him, but Shannon grabbed her by the hair and yanked her back in the house. Tracy testified that although he did push Shannon in the chest, he did so only as a defensive measure because she was about to attack him. Tracy left without the girls and was arrested that night. When he and his parents met Shannon and the girls at the restaurant the next day, Shannon threatened to kill herself and voluntarily relinquished the girls and their records to him. Concerning Shannon's treatment of the girls, Tracy testified that Shannon yanked the girls by their arms and hair, drove recklessly with them in the car, and threatened to shave one of the girl's head. He further testified that Shannon's parents were caring for the children, not Shannon. He said that Shannon made false allegations of abuse when she feared that Tracy would seek custody of the children, that Shannon carried a loaded pistol with her at all times, that Shannon could not hold a job, that Shannon did not seek proper medical attention for the children, and that Shannon was suicidal.

Tracy's sister-in-law, Pam, testified to the same version of events as Tracy, but added that on the evening of the altercation at Tracy's parents' house, she saw Shannon consume a beer, four shots of vodka, and a mixed drink before Tracy arrived, and that after Tracy left, Shannon asked for mouthwash and waited fifteen minutes before calling the police. Pam further stated that Tracy was sober and only raised his hands against Shannon in defense.

Officer Joe Tear of the Red River County Sheriff's Department testified that he responded to Shannon's call by going to Tracy's parents' house and interviewing Shannon. He then left the house, located Tracy, and arrested him. Tear testified that on the night in question, Shannon smelled of alcohol, but Tracy did not.

■ The testimony presented to the trial court regarding Shannon's fitness to raise the children was conflicting, and the trial court had to decide what testimony

was credible. In its findings of fact and conclusions of law, the trial court stated that it did not find Shannon to be a credible witness. Based on the testimonies of Tracy, Pam, and the police officer regarding Shannon's abusive behavior toward the children, her propensity toward anger, her drinking, and her suicidal tendencies, the trial court further found that Shannon created an environment that physically and emotionally endangered the children, that Shannon was physically and emotionally abusive to the children, that Shannon demonstrated a pattern of violence toward Tracy and the children after the divorce, and that the children's best interests would be served by placing them with Tracy. Based on the evidence adduced at the hearing and recited above, there was legally and factually sufficient evidence to support the trial court's decision to modify custody. Although there were two differing accounts of Shannon's behavior, the trial court has wide discretion in judging credibility because it observes the parties' testimonies first hand and is in a better position than the appellate court to judge sincerity and honesty. *Prause v. Wilder*, 820 S.W.2d 386, 387 (Tex.App.—Texarkana 1991, no writ).

Shannon's first point of error is overruled.

In her second point of error, Shannon contends the trial court's decision not to allow her standard visitation was based on insufficient evidence. The Texas Family Code establishes a rebuttable presumption that a standard possession order gives a possessory conservator reasonable minimum possession of the child and is in the best interest of the child. TEX. FAM.CODE ANN. § 153.252 (Vernon 1996).

■ In its findings of fact and conclusions of law, the trial court stated that awarding Shannon standard possession of the children was not in the children's best interests. Additionally, the trial court found that Shannon had "serious emotional problems that endanger the children." Based on the trial court's findings and the evidence recited above, particularly the evidence regarding Shannon's suicidal tendencies and her behavior toward the children, Tracy rebutted the presumption that Shannon should be awarded standard possession of the children.

Shannon's second point of error is overruled.

■ In her final point of error, Shannon contends the trial court abused its discretion by fashioning an order that effectively denies her any access to the children and does not specifically state the periods that she is allowed possession and access. The trial court has discretion to determine the possessory conservator's access to the children. *In re Walters*, 39 S.W.3d 280, 285–86 (Tex.App.—Texarkana 2001, no pet.); *Thompson v. Thompson*, 827 S.W.2d 563, 566 (Tex.App.—Corpus Christi 1992, writ denied). A trial court abuses its discretion if it acts unreasonably and arbitrarily or without reference to guiding principles. *Downer*, 701 S.W.2d at 242.

Recently in *In re Walters*, this Court examined a custody order similar to the one in the present case. We found that:

> because appointment of a parent as possessory conservator implies a finding that access by that parent will not endanger the physical or emotional welfare of the child, complete denial of access is limited to those situations in which the parent's access will not endanger the physical or emotional welfare of the child, but is not in the best interest of the child.

*In re Walters*, 39 S.W.3d at 286–87 (citation omitted).

■ We must first determine whether the trial court's order denies Shannon access to the children or merely restricts her access. The possession order stated, "The possession periods of the children by Shannon Michelle Silva are to be at reasonable [sic] times and places as determined by Tracy Shane Silva." The terms of this order allow Tracy complete discretion over Shannon's possession of the children and are not enforceable by contempt because they give Tracy sole authority over when and where Shannon may have access to or possession of her children. This could effectively deny Shannon access to the children and would leave her without the remedy of contempt against Tracy.

Because the order could deny access to Shannon, we must next determine whether the trial court concluded that complete denial of access is in the children's best interests. The trial court's appointment of Shannon as possessory conservator implies that any threat she poses to the children can be remedied by restricted access to or possession of the children. The order also contemplates Shannon having access to the children by stating that, "Access should not be unreasonably denied where agreement is possible." Additionally, testimony showed that Shannon had successfully cared for the children while living with her parents. Based on the testimony recited above, the trial court had sufficient evidence to conclude that Shannon would pose some danger to the children if she were given unrestricted possession; however, complete denial of access was not warranted and, from an examination of the order, was not intended by the trial court.

In an order appointing a parent as possessory conservator, the trial court must specifically state the times and conditions for possession of or access to the children unless a party shows good cause why specific orders would not be in the children's best interests. TEX. FAM.CODE ANN. § 153.006(c) (Vernon 1996). Tracy offered no evidence to show good cause that specific times and conditions for possession and access would not be in the children's best interests.

Tracy relies on *In re R.D.Y.*, 51 S.W.3d 314 (Tex.App.—Houston [1st Dist.] 2001, no pet. h.), to establish that the trial court's order was sufficient.[1] In *In re R.D.Y.*, the trial court named a father, mother, and grandmother joint managing conservators of R.D.Y. The grandmother was given the right to determine the residence of the child and was allowed "sole discretion" to determine if the mother was "mentally and physically capable of properly exercising her visitation with the child." *Id.*, 51 S.W.3d at 323 n. 1. The Houston court upheld the trial court's order and based its decision on the fact that a judge has discretion to place conditions on the mother's visitation. *Id.* at 322–323. The first of the two cases cited by the Houston court in support of its conclusion held that the trial court did not err by placing restrictions on the *environment* in which the visitation would take place. *See Capello v. Capello*, 922 S.W.2d 218, 220 (Tex.App.—San Antonio 1996, no writ) (allowing only appellant's parents or siblings to transport child to and from visitation was not an abuse of discretion). The second case cited by the Houston court actually reversed the trial court for failure to give specific orders on visitation in violation of TEX. FAM.CODE ANN. § 153.006(c).[2] *See Thompson*, 827 S.W.2d 563 (trial court abused its discretion by ordering that appellant be given access to children only at

---

**1.** The Houston court's decision in *In re R.D.Y.* was rendered only three months after our decision in *In re Walters*.

**2.** Formerly TEX. FAM.CODE ANN. § 14.03(a).

times mutually agreed on between conservators during the summer months of the year). Neither of the cases relied on by the Houston court upheld an order allowing one conservator complete discretion over another conservator's visitation. Although a judge can rightfully restrict the conditions of the environment in which a parent's visitation will take place, we respectfully disagree with the Houston court's assessment that giving total discretion, unenforceable by contempt, to one conservator constitutes a mere restriction on the conditions of visitation.

Because the order in the present case could effectively deny Shannon access to the children, because complete denial was not shown to be in the children's best interests, and because Tracy did not show good cause why specific orders were inappropriate, the trial court is required to fashion an order that specifically articulates the times and conditions of Shannon's access to the children.

Shannon's third point of error is sustained.

The judgment of the trial court is affirmed in part and reversed and remanded in part with the instruction that the trial court construct a specific custody order that articulates the times and conditions of Shannon's access to the children.