In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00085-CV
______________________________


 
 
IN THE INTEREST OF J. C. S. AND J. G. S., CHILDREN
 
 


                                              

On Appeal from the County Court at Law
Panola County, Texas
Trial Court No. 2001-271


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            The evidence conflicts concerning competing motions to modify child custody and support
filed by ex-spouses Margaret Smothers and Kevin Smothers. After hearing the motions, the trial
court retained Kevin as a joint managing conservator—thus continuing his possession of and access
to the children under a standard possession order—and reduced his monthly child support obligation
from $380.00 to $260.00 per month. Margaret appeals, complaining that the trial court abused its
discretion by (1) failing to remove Kevin as a joint managing conservator and (2) reducing Kevin's
child support obligations. We affirm.
1. The Trial Court Had Discretion To Retain Kevin as Joint Managing Conservator
            In determining conservatorship issues, courts shall primarily consider the best interest of the
child. Tex. Fam. Code Ann. § 153.002 (Vernon 2002). There is a rebuttable presumption that the
appointment of parents as joint managing conservators is in the best interest of the child, but the
presumption is removed by a "finding of a history of family violence." Tex. Fam. Code Ann.
§ 153.131(b) (Vernon 2002). Appointing parents as joint managing conservators is preferred, unless
the trial court finds that "would not be in the best interest of the child because [it] would significantly
impair the child's physical health or emotional development." Tex. Fam. Code Ann. § 153.131(a)
(Vernon 2002); see Chavez v. Chavez, 148 S.W.3d 449, 458 (Tex. App.—El Paso 2004, no pet.).
            We review the trial court's modification of a joint managing conservatorship under an abuse
of discretion standard. Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982); In re Moss, 887
S.W.2d 186, 188 (Tex. App.—Texarkana 1994, no writ). The matter of determining who should be
appointed managing conservator is left to the sound discretion of the trial court. Martinez, 953
S.W.2d at 403; Altamirano v. Altamirano, 591 S.W.2d 336, 338 (Tex. Civ. App.—Corpus Christi
1979, no writ). The trial court is in a better position to determine what will be in the best interest
of the child since it faced the parties and their witnesses, observed their demeanor, and had the
opportunity to evaluate the claims made by each parent. Martinez, 953 S.W.2d at 403. Its judgment
will not be disturbed on appeal unless there has been a clear abuse of discretion. Id.
            A trial court abuses its discretion if it acts arbitrarily and unreasonably or without reference
to guiding principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985). 
When there is some evidence of a substantive and probative character to support the trial court's
decision, no abuse of discretion occurs. Limbaugh v. Limbaugh, 71 S.W.3d 1, 14 (Tex. App.—Waco
2002, no pet.). The determination of conservatorship issues is guided by the best interest of the child
and is "intensely fact driven." Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex. 2002). In our review of a
modification order under an abuse of discretion standard, legal and factual sufficiency are not
independent grounds of error, but are relevant factors in deciding whether the trial court abused its
discretion. In re A.P.S., 54 S.W.3d 493, 495 (Tex. App.—Texarkana 2001, no pet.); In re Marriage
of Driver, 895 S.W.2d 875, 877 (Tex. App.—Texarkana 1995, no writ).
            Margaret contends the evidence shows Kevin should not have been named a joint managing
conservator. Margaret testified her car was vandalized by having its oil drained onto the driveway;
that Kevin had sexually assaulted her; that he threatened to take the children and disappear, to kill
her, and to burn down the house; that he had appeared at her home and attempted to get her to let
him in, banging on the doors and breaking a window;


 and that he showed up at her house on
Christmas Eve 2002 and said he would take the children if he did not get to spend the night. A few
days later, on New Year's Eve, Kevin called the local sheriff's department and told them Margaret
was out drunk and partying, leaving the children at home. There was testimony that she was out
partying and had left the two young children—ages three and seven—at home in the care of young
teenage boys. By the time she returned home sometime after 2:00 a.m., Kevin had taken possession
of the children. Margaret testified that Kevin also cut up some of her clothing and had taken some
items from the house.
            Kevin failed to return the children after the New Year's Eve episode. The children were
retrieved from Kevin two days later, and he was indicted for "interference with child custody." 
Kevin quit his job in Louisiana and, in June 2003, told Margaret he wanted the children for extended
summer visitation. She testified she feared he intended to take the children and run, and obtained
a temporary restraining order. The court sent Kevin for drug testing and a psychological evaluation
and, two weeks later, expanded Kevin's possession of and access to the children.
            There was extensive evidence about failed attempts to reconcile, threats and verbal
confrontations, misunderstandings, and efforts by the parties to involve various state and local
agencies in their squabbles. There was also contradictory evidence about whether Margaret had
received proper notice or whether she had simply denied Kevin his due possession of the children
at Christmas in 2003. Following this incident, Margaret sent police looking for Kevin for alleged
interference with child custody. There was contradictory evidence about whether Kevin broke a
window at Margaret's home, and substantial evidence that both parties had engaged in chronic name-calling during the course of their separations and divorce.
            Margaret argues that, because a "protective order" had been entered by the court, it could not
subsequently retain Kevin as a joint managing conservator. Her argument is based on language in
Section 153.004 of the Texas Family Code, which addresses the effect evidence of physical or sexual
abuse, or proof of a history of family violence by a party has on managing conservatorship status. 
See Tex. Fam. Code Ann. § 153.004 (Vernon Supp. 2004–2005). Margaret asserts that, when a
protective order is entered, it is equivalent to proof of facts which, under Section 153.004, would
prohibit an order or continuation of joint managing conservatorship. We disagree.
            Certainly, Section 153.004(b) prohibits a joint managing conservatorship if certain conditions
are met:
 The court may not appoint joint managing conservators if credible evidence is
presented of a history or pattern of past or present child neglect, or physical or sexual
abuse by one parent directed against the other parent, a spouse, or a child . . . .

Tex. Fam. Code Ann. § 153.004(b). The question is whether there was credible evidence before
the trial court of child neglect or physical or sexual abuse by Kevin against a child or against
Margaret. First, we address Margaret's structural assertion that the issuance of the protective order
was necessarily based on such evidence. Then we examine this record for such evidence.
            In issuing a protective order against Kevin November 24, 2003, the trial court found that
Kevin had committed "family violence." "Family violence" occurs, under Section 71.004 of the
Texas Family Code, if any one of three alternative things occurs:
(1) an act by a member of a family or household against another member of
the family or household that is intended to result in physical harm, bodily injury,
assault, or sexual assault or that is a threat that reasonably places the member in
fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not
include defensive measures to protect oneself;
 
(2) abuse, as that term is defined by Sections 261.001(1)(C), (E), and (G), by
a member of a family or household toward a child of the family or household; or
 
(3) dating violence, as that term is defined by Section 71.0021.
Tex. Fam. Code Ann. § 71.004 (Vernon 2002) (emphasis added). The standard of proof required
for a protective order under Section 71.004 is properly easier to meet than the more demanding
standard of Section 153.004(b). Logically, Kevin might have threatened Margaret and put her in fear
of bodily injury or even assaulted her by simple contact


—constituting "family violence" under
Section 71.004, and thus providing a predicate for a proper protective order to be issued against
him—without that activity constituting "a history or pattern of . . . physical . . . abuse" under Section
153.004(b), sufficient to prohibit the trial court from ordering joint managing conservatorship.
            Margaret directs us to a case in which the trial court found undisputed proof of physical
abuse, and the appellate court thus concluded the trial court abused its discretion by designating the
parties as joint managing conservators. In re B.L.S., 153 S.W.3d 485 (Tex. App.—Amarillo 2004,
no pet.). Compare Burns v. Burns, 116 S.W.3d 916 (Tex. App.—Dallas 2003, no pet.) (evidence
of physical violence conflicted, and protective order at issue in case not brought to attention of trial
court). We find Margaret's authority inapplicable.
            At the conclusion of the November 18 hearing, when the trial court entered the protective
order, the court also ordered Kevin to attend battering counseling. At the January 22 hearing,
evidence showed that Kevin had largely complied, though he had not completed the counseling and
had not attended every meeting. In making its decision, the court was also confronted with the
evidence about Margaret's behavior in failing to turn the children over for the Christmas holidays,
and also with evidence about her behavior on New Year's Eve. We conclude that the previous
issuance of the protective order against Kevin does not require that Kevin subsequently be denied
joint managing conservator status, but that the decision was, instead, within the discretion of the trial
court.



            Margaret points us to no place in the record which she claims contains any "credible evidence
. . . of a history or pattern of . . . child neglect, or physical or sexual abuse" of her or a child by
Kevin. While Margaret did testify at the November 18, 2003, hearing that Kevin sexually assaulted
her, we find no credible evidence of neglect or physical or sexual abuse by Kevin against a child. 
At a July 9, 2003, hearing, Margaret testified to her concerns about Kevin's "being responsible"
based on a recreational incident at a lake in which their six-year-old son who cannot swim was
allowed to "tube" in deep water without any personal flotation device and had a drowning scare. At
the same hearing, Margaret accused Kevin of mental abuse by allegedly encouraging the children
to make false reports of sexual contact by another person. At the November 18, 2003, hearing which
resulted in the issuance of the protective order against Kevin, Margaret provided testimony alleging
that Kevin put their four-year-old daughter up to falsely reporting that Margaret's teen-aged son had
an encounter of a sexual nature with the daughter. At the latter hearing, Margaret vaguely alleged
past or future "inappropriate sexual behavior" by Kevin with the four-year-old daughter


 and clearly
alleged Kevin's use of the children to harass Margaret. Finally, during the same protective order
hearing, Child Protective Service (CPS) child abuse investigator Mandy Bryan recounted a CPS
interview she witnessed of the four-year-old daughter producing behavior by the child that was
inconclusive and open to interpretation, but which fell far short of credible evidence of sexual abuse
of the child by Kevin. Kevin denied ever doing anything to harm his children and testified that he
never would harm them. He specifically denied ever touching, or taking pictures of, his daughter's
private parts. 
            The ultimate problem with Margaret's view of the conservatorship in general is that the
evidence from the parties is in conflict, and the trial court has found against her. Although there
were differing accounts of Kevin's behavior, the trial court has wide discretion in judging credibility
because it observes the parties' testimony first hand and is in a better position than the appellate court
to judge sincerity and honesty. See A.P.S., 54 S.W.3d at 497; Prause v. Wilder, 820 S.W.2d 386,
387 (Tex. App.—Texarkana 1991, no writ). There was legally and factually sufficient evidence
adduced to support the trial court's decision not to modify custody. We conclude the trial court was
within its discretion in continuing the joint managing conservatorship between Margaret and Kevin.
2. The Trial Court Had Discretion To Reduce Kevin's Child Support Obligation
            The remaining issue is whether the trial court abused its discretion by lowering the amount
of child support due by Kevin, based on his lower income. The only complaint raised by Margaret
in this respect is that Kevin had intentionally left his higher paying job at a Shreveport casino to take
a job in Texas working as a cabinetmaker. Margaret argues that, because Kevin was intentionally
underemployed, the trial court should not have lowered the support.
            Though the Texas courts have not been entirely consistent on this topic, an important factor
in reviewing underemployment is whether the child-support payer took a lower income with the
purpose of reducing his or her child support obligations. See In re Davis, 30 S.W.3d 609, 616–17
(Tex. App.—Texarkana 2000, no pet.); DuBois v. DuBois, 956 S.W.2d 607, 610 (Tex. App.—Tyler
1997, no writ). Thus, in order for a court to find that a parent is intentionally underemployed or
unemployed under Section 154.066 of the Texas Family Code, there must be evidence that the parent
reduced his or her income to decrease child support payments.
 There is no presumption that simply because a parent is no longer as lucratively
employed as he was during his marriage, he is intentionally underemployed or
unemployed. The requisite intent or lack thereof, however, may be inferred from
such circumstances as the parent's education, economic adversities and business
reversals, business background, and earning potential.

Tex. Fam. Code Ann. § 154.066 (Vernon 2002); Davis, 30 S.W.3d at 617.
            In this case, Kevin stopped working at a gambling establishment in Louisiana in order to take
a skilled job as a cabinetmaker in Texas. The trial court heard the evidence and decided this job
change was not made for the purpose of decreasing child support payments. The evidence does not
require a different conclusion.
            We affirm the judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          December 20, 2004
Date Decided:             April 18, 2005