# IN THE SUPREME COURT OF TEXAS

═══════════
No. 20-0175
═══════════

IN THE INTEREST OF J.J.R.S. AND L.J.R.S., CHILDREN

═══════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
═══════════════════════════

**Argued October 28, 2020**

JUSTICE DEVINE delivered the opinion of the Court.

This parental rights case presents two questions: (1) whether, and under what circumstances, a trial court may order that a parent's access to a child is solely at the discretion of the managing conservator; and (2) whether the trial court's issuance of an ex parte temporary order pursuant to Texas Family Code section 262.201(o) is unconstitutional on its face or as applied to Mother.

The court of appeals determined that the evidence was legally and factually sufficient to support the terms of the visitation order and that the terms of the order were permissible under the Family Code upon a finding that they were in the best interest of the children. 607 S.W.3d 400, 405–08 (Tex. App.—San Antonio 2020). It also denied Mother's constitutional challenge to Texas Family Code section 262.201(o). *Id.* at 408–10.

We hold that the trial court did not abuse its discretion in imposing a restriction on Mother's right of access because the court could have reasonably concluded that such a severe restriction was in the children's best interest. *See* TEX. FAM. CODE § 153.193. We decline to address Mother's constitutional challenges to Texas Family Code section 262.201(o) because they were rendered moot by the trial court's issuance of a final order. Accordingly, we affirm the judgment of the court of appeals.

## I

In August 2018, law enforcement responded to an aggravated robbery at a San Antonio motel. According to Mother, the incident began when one of her clients asked her to perform certain acts with which she was uncomfortable while prostituting herself. A struggle ensued, and Mother's boyfriend entered the room with a firearm and proceeded to take the client's clothes and money. The client chose not to press charges.

In a nearby motel room, law enforcement found Mother's two children, J.J.R.S. and L.J.R.S. Between both rooms, law enforcement retrieved three bags of methamphetamine less than a gram each, a small amount of marijuana, glass pipes, and small, clear baggies.[1] The boyfriend claimed the drugs were his. Mother stated that the unregistered firearm belonged to her but denied any attempt to rob her client. Mother stated that she and her children were from Florida and had been living in the motel for eight months. Police made no arrests during the incident, but Mother called her sister—the children's maternal aunt—to watch the children that night. The children have been residing with Aunt and Uncle since.

---

[1] The record is unclear whether the drugs were found in the children's room or the other room.

Shortly after the incident, law enforcement referred the case to the Texas Department of Family and Protective Services. The Department investigator first interviewed both children, whom he perceived as wanting to protect Mother because they "[did] not want her to get into trouble." The Department next interviewed Aunt, who described her relationship with Mother as estranged. Six months before the incident, Mother had contacted Aunt for the first time in two years, asking for money to pay for a motel room. According to Aunt, the children lived in Puerto Rico with Mother before moving to Florida and were likely born addicted to drugs. Aunt stated she was willing to take care of the children.

The investigator then separately interviewed both Mother and her boyfriend. During his interview, the boyfriend—who is not the biological father of J.J.R.S. or L.J.R.S.—denied any attempt to rob the client and denied possessing a firearm. He admitted using marijuana but refused to sign an acknowledgment-of-substance-use form. Mother also admitted using marijuana but refused a drug test. She admitted to prostituting herself but denied any attempted robbery, stating that her boyfriend was trying to protect her from an abusive client. Mother stated that she called her sister only because she was not sure if she was going to jail.

To avoid legal action, the Department attempted to place the children with Aunt and Uncle. Mother, however, refused to sign a Parental Child Safety Placement form and refused to comply with services. The Department remained concerned for the children's safety, believing that they would be in immediate danger if returned to Mother because of her illegal activities, including drug use, robbery, and prostitution.

The Department filed its original petition against Mother on August 20, 2018, requesting orders pursuant to Texas Family Code section 262.101 for temporary sole managing

conservatorship of the children pending final disposition of the lawsuit. *See* TEX. FAM. CODE §§ 262.201, 105.001(a)(1), (h). If reunification could not be achieved, the Department sought termination of Mother's parental rights. *Id.* § 161.001(b).

The day the lawsuit was filed, the trial court issued a temporary emergency order naming the Department temporary sole managing conservator and noticed a full adversary hearing to be held nine days later.[2] The court appointed an attorney ad litem for Mother and a separate attorney ad litem and guardian ad litem for the children. A full adversary hearing pursuant to chapter 262 was held on September 12. *Id.* § 262.201. Mother was not served with a citation prior to this hearing and was not present at the hearing, but the court nonetheless entered an order naming the Department temporary managing conservator for the pendency of the lawsuit. *See id.* § 262.201(o) ("When citation by publication is needed for a parent . . . in an action brought under this chapter because the location of the parent . . . is unknown, the court may render a temporary order without delay at any time after the filing of the action without regard to whether notice of the citation by publication has been published."). The order restricted Mother's visitation to two visits per month until the final trial. Mother was eventually served by publication on September 18, after the Department stated it could not locate her.

The Department established a family service plan for Mother and the children's biological Father, who lived in Florida when the lawsuit was initiated.[3] Mother was uncooperative with the Department and failed to complete any service plan goals, including demonstrating the ability to

---

[2] The hearing was pushed beyond nine days and was eventually held on September 12.
[3] When the lawsuit began, Father's exact whereabouts in Florida were unknown to the Department. Eventually, Father made contact with the Department and was amenable to engaging in services and having a relationship with his children. Because only Mother appeals here, information regarding Father's parental rights is omitted unless relevant.

stay sober, providing basic necessities to the children, completing therapy for her diagnosed mental health conditions, and finding stable housing. Mother did not make contact with the Department to acknowledge her service plan or visit her children until May 1, 2019—eight months after the lawsuit was filed. Mother arranged visitation with her children but regularly missed meetings, attending only four visits with her children over the life of the lawsuit. By contrast, while in the care of Aunt and Uncle, the children began attending school for the first time in two years and regularly attended therapy, showing improvements in their physical and emotional development.

At the final trial, Department supervisor Kimberly Barnhill testified, stating that the children had bonded with Aunt and Uncle, who were meeting their emotional needs. Barnhill further testified that Mother could not meet the physical and emotional needs of the children because she failed to maintain any stability, permanent housing, or contact with the children throughout the case. Even so, Barnhill believed it was in the children's best interest to have limited visitation with Mother because the children missed their mom and were sad about the situation.

On cross-examination, Barnhill testified that she was opposed to once-a-month visits with Mother at a supervised facility, instead preferring supervised visits at Aunt's discretion because of the "emotional and . . . drug-influenced state that Mother has been in throughout the case." When pressed if procedures such as clean drug tests could alleviate these concerns, Barnhill stated they would not alleviate the concerns stemming from Mother acting "highly hysterical" on some phone calls and not showing up to visits, which was hard on the children. Making the children wait for Mother in the Department's lobby was "not a very good environment . . . especially when they're excited to see their mom," Barnhill believed. The "lack of stability," she testified, is "extremely emotionally traumatizing for them."

Mother offered no evidence at the final trial.

Because of the children's bond with Mother and Father's attempt to maintain a relationship, the Department recommended the trial court not terminate their parental rights. The guardian ad litem recommended termination of Mother's parental rights but stated he would be amenable to possessory conservatorship with visitation "possibly later with a lot of services." The court appointed special advocate (CASA) representative recommended termination of Mother's rights. Based on those recommendations, the court named Aunt and Uncle permanent managing conservators and named Mother and Father possessory conservators. The court orally stated it was deviating from the standard possession order based on the testimony and evidence presented by the Department.

With regard to Mother, the final order stated that she "shall have possession of the children at times mutually agreed to in advance by the parties." In the absence of mutual agreement, Mother could have "supervised visitation with the children, under the terms and conditions agreed to in advance by the managing conservator," with 48 hours' advance notice. Below this, in handwriting, the trial court added, "[o]nly if the managing conservator agreed to visitation. Sole discretion." The court orally stated that its order was in the best interest of the children.

Mother appealed, arguing there was insufficient evidence to support the order, the order was void for vagueness, and Family Code section 262.201(o) is facially unconstitutional. The court of appeals affirmed. 607 S.W.3d at 405–08. First, the court determined that the trial court had good cause to deviate from the standard possession order because Mother's "failure to attend visits was harming the children emotionally." *Id.* at 407. Thus, requiring specific times and conditions for Mother's possession and access was not in the children's best interest. *Id.* at 407–08. The court

further stated that a "severe restriction or limitation, even one that amounts to a denial of access, is permissible if it is in the best interest of the child." *Id.* at 407 (quoting *In re A.N.*, No. 10-16-00394-CV, 2017 WL 4080100, at *7 (Tex. App.—Waco Sept. 13, 2017, no pet.)). Here, the court concluded, the evidence was legally and factually sufficient to support the order. *Id.* at 405. As such, the court of appeals held, the trial court did not abuse its discretion in "deciding not to state specific times and conditions for Mom's visits but instead ordered that Aunt and Uncle set those times and conditions." *Id.* (citing *In re K.A.M.S.*, 583 S.W.3d 335, 344 (Tex. App.—Houston [14th Dist.] 2019, no pet.)). To gain greater access, the court explained, Mother may petition the trial court in the future if her or the children's circumstances materially or substantially change. *Id.* at 407–08 (citing Tex. Fam. Code § 156.001).

Mother filed a petition for review, arguing in this Court that (1) the court of appeals erred in holding that vesting Aunt and Uncle with complete discretion over her access rights to the children was permissible under the Family Code, and (2) the trial court violated her due process rights by naming the Department temporary managing conservator, pursuant to Texas Family Code section 262.201(o), before she received notice of the suit.

While we understand the gravity of imposing a severe restriction or limitation on access to one's children, we nevertheless conclude that the trial court did not abuse its discretion in vesting the managing conservators with complete discretion over Mother's access to the children. We do not reach the merits of Mother's constitutional arguments regarding Texas Family Code section 262.201(o) because they are moot.

## II

The final order naming Mother possessory conservator gave her "possession of the children at times mutually agreed to in advance by the parties." In the absence of such mutual agreement, Mother could have supervised visitation with the children in the managing conservators' "[s]ole discretion." Mother argues that such an order effectively denies her the right of access to her children.

For reasons explained below, we disagree.

## A

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE § 153.002. As conservatorship determinations are "intensely fact driven," *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002), the trial court is in the best position to "observe the demeanor and personalities of the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record," *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.). A trial court's determination of what is in the child's best interest, specifically the establishment of terms and conditions of conservatorship, is a discretionary function. *MacCallum v. MacCallum*, 801 S.W.2d 579, 582 (Tex. App.—Corpus Christ–Edinburg 1990, writ denied). The trial court's judgment will be reversed only when it appears from the record as a whole that the court has abused its discretion. *Gillespie v. Gilliespie*, 644 S.W.2d 449, 451 (Tex. 1982). A trial court abuses its discretion when it acts "without reference to any guiding rules or principles; or in other words, [when it acts] arbitrarily or unreasonably." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

Mother's contention that the trial court abused its discretion presumes that the trial court lacked the authority to tailor the visitation order as it did. The Family Code sets out a series of directives to which a trial court must adhere when determining the appropriateness of a visitation order. Under the Family Code, "a parent shall be appointed sole managing conservator" unless a court finds that the appointment would not be in the best interest of the child "because the appointment would significantly impair the child's physical health or emotional development." TEX. FAM. CODE § 153.131(a). A parent who is not appointed managing conservator "shall" be appointed possessory conservator, "unless [the court] finds that the appointment is not in the best interest of the child and that parental possession or access would endanger the physical or emotional welfare of the child." *Id.* § 153.191. A court, based on these parameters, must then determine the conservators' appropriate level of possession and access.

There is a rebuttable presumption that the standard possession order provides the reasonable minimum level of possession and access for a parent named possessory conservator and is in the best interest of the child. *Id.* § 153.252. When determining whether to deviate from the standard possession order, a court may consider "(1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factor." *Id.* § 153.256. Importantly, the terms of an order that deviates from the standard possession order—that is, an order that "denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child"—"may not exceed those that are required to protect the best interest of the child." *Id.* § 153.193. Further, a court must "specify and expressly state in the order the times and conditions for possession of or access to the child,

9

*unless* a party shows good cause why specific orders would not be in the best interest of the child." *Id.* § 153.006(c) (emphasis added).[4]

Nonspecific orders issued pursuant to section 153.006(c) can vary, based on the needs of the case, as to the level of specificity provided by the trial court and the amount of discretion left to the parties. *See id.* § 153.193. The type of nonspecific order at issue in this case—an "as agreed" visitation order—falls on the opposite end of the spectrum from the standard possession order, leaving visitation to the managing conservator's complete discretion.

Neither party argues that the trial court lacked good cause to deviate from the standard possession order. *See id.* § 153.006(c). Thus, we address whether section 153.006(c) of the Texas Family Code relaxes the specificity requirement for possession and access orders to the point of permitting an "as agreed" order as the one issued here. We conclude that it does.

**B**

Mother argues that Texas Family Code section 153.006(c) must have intended to permit courts to issue less specific orders, if specificity is not in the child's best interest, but that less specificity does not mean *no* specificity. Conversely, the Department argues that the propriety of any restriction or limitation imposed on possession or access rights depends on whether such restrictions are in the best interest of the child. In other words, once a trial court determines that good cause exists for a nonspecific order, the only question left is whether the extent of the restriction or limitation under section 153.193 is in the best interest of the child. *See In re K.A.M.S.*, 583 S.W.3d at 344 ("A trial court does not abuse its discretion in restricting a parent's possession

---

[4] On request by a party, the court shall state in writing the specific reasons for the variance from the standard possession order. TEX. FAM. CODE § 153.258(a). Here, Mother did not request findings nor does she complain on appeal that the trial court failed to make them.

when the record contains some evidence to support a finding that such restrictions are in the child's best interest."). The Department argues that here, no visitation until Mother "get[s] her act together" was in the best interest of the children because Mother's failure to show up to scheduled meetings caused "extreme disappointment" for the children, "manifested by crying after waiting in the CPS lobby for long periods of time."

Mother's contention that the trial court lacked the authority to issue an "as agreed" visitation order is a matter of statutory construction. "When interpreting statutes, we presume the Legislature's intent is reflected in the words of the statute and give those words their fair meaning." *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018) (citing *In re C.J.N.–S.*, 540 S.W.3d 589, 591 (Tex. 2018) (per curiam)). We analyze statutes "as a cohesive, contextual whole, accepting that lawmaker-authors chose their words carefully, both in what they included and in what they excluded." *Id.* (quoting *Sommers v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 754 (Tex. 2017)); *see also R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 628 (Tex. 2011) ("When the Legislature uses a word or phrase in one portion of a statute but excludes it from another, the term should not be implied where it has been excluded.").

When interpreting statutes, we start with the words of the statute and look first to the "plain and common meaning of the statute's words," *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002), "unless a different meaning is supplied by legislative definition," *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). Section 153.006(c) of the Family Code allows the trial court to issue a nonspecific order regarding a possessory conservator's possession and access when "good cause" exists, *see* TEX. FAM. CODE § 153.006(c), while section 153.193 places an outer limit on the permissible scope of restrictions on a parent possessory conservator's

11

rights: such "restrictions or limitations on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child," *id.* § 153.193. Thus, in rare cases, a severe restriction or limitation is permissible if it is in the best interest of the child. *See In re Walters*, 39 S.W.3d 280, 286 n.2 (Tex. App.—Texarkana 2001, no pet.).

Mother argues that the trial court's order in this case, which authorized supervised visitation with the children at Aunt and Uncle's sole discretion, amounts to a wholesale denial of access that section 153.193 does not authorize, regardless of best interest. Mother asserts that under section 153.193, the court may "den[y] possession of a child to a parent" but may only impose "restrictions or limitations" on a parent's access to a child. TEX. FAM. CODE § 153.193. We disagree with Mother's characterization of the trial court's order as a denial of access and thus need not decide whether section 153.193 authorizes such an order.

Because the Family Code does not define these terms, we begin with the commonly understood meanings of "deny," "restriction," and "limitation." To "deny" is "to not allow someone to have or do something."[5] A "restriction" is something that "confines within bounds" or "restrains,"[6] and a "limitation" is something that "bounds, restrains, or confines."[7] In other words, a denial is an outright refusal to allow certain conduct to occur, whereas a restriction or limitation confines conduct to certain bounds. The trial court's visitation order in this case falls into the latter category. By its terms, Mother can obtain access to her children either (a) when she and the managing conservators agree or, if they cannot reach an agreement, (b) when the managing

---

[5] *Deny*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/deny (last visited May 27, 2021).

[6] *Restrict* and *restriction*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/restrict (last visited May 27, 2021).

[7] *Limitation* and *limit*, MERRIAM-WEBSTER https://www.merriam-webster.com/dictionary/limit (last visited May 27, 2021).

conservators consent to access. In other words, the order *restricts* and *limits* Mother's access to her children to supervised visitation at the managing conservators' discretion. The restriction is undoubtedly a severe one, permissible only if necessary to protect the children's best interest, but it is not an outright denial that forecloses all access.

This case resembles *In re A.N.*, which concerned an "as agreed" visitation order nearly identical to the one at issue here. 2017 WL 4080100, at \*7. In *A.N.*, Mother's parental rights to one of her daughters were terminated based on endangerment and neglect, but she was named possessory conservator of her other daughter. *Id.* at \*5, \*3. The visitation order stated that "in the absence of mutual agreement," Mother "shall have no visitation with the child . . . due to present conditions and the safety concerns regarding [Mother]," unless the child's caregivers determine "in their sole discretion that visitation between [Mother] and [the child] is in the best interest of the child." *Id.* at \*7. Mother appealed, arguing that the trial court abused its discretion by creating an "unenforceable visitation schedule." *Id.* at \*6. Specifically, Mother argued that: (1) visitation must be in the child's best interest because she was appointed possessory conservator; (2) visitation could only occur if the managing conservators determined it was in the child's best interest, amounting to no visitation at all; and (3) the terms of visitation in the trial court's order were ambiguous. *Id.*

The court of appeals determined there was sufficient evidence to find that a severe restriction was in the child's best interest. *Id.* at \*7–8. Though it recognized that an "as agreed" order should be used only in rare circumstances, the court disagreed that the terms of the order were "tantamount to no visitation at all." *Id*. The court noted record evidence that the child's caregivers were willing to allow supervised contact with Mother if that contact was positive,

13

concluding that the order's language suggested that "it is not in [the child's] best interest for [Mother] to have access in the near term due to 'present conditions' and 'safety concerns.'" *Id.* Thus, "visitation was not completely denied, as [the child's] caregivers were authorized to resume visitation" when they believed it would be in her best interest. *Id.* at \*8.

As in *A.N.*, the record here contains legally sufficient evidence to support a finding that it was in the best interest of J.J.R.S. and L.J.R.S. to impose a severe restriction on Mother's access. For one, the incident leading to the children's removal involved Mother soliciting with an armed boyfriend while her children waited in another motel room. Evidence collected from the scene included drug paraphernalia that could have been accessible by the children. Once the lawsuit was filed, Mother failed to participate in or acknowledge the lawsuit for eight months, attending only four scheduled visits with her children. Mother's failure to attend most visits was very hard on the children, causing J.J.R.S. to worry about Mother's safety and wonder if she was hurt. Prior to their removal, both children had been out of school for nearly two years and showed signs of social and emotional developmental issues. Mother refused all drug tests, failed to complete any part of her service plan, and failed to obtain stable housing or a job throughout the entirety of the lawsuit. Notably, that same lack of stability prior to the removal had been "extremely emotionally traumatizing for [the children.]" This case presents extreme circumstances warranting a severe restriction.

We hold that Texas Family Code sections 153.006(c) and 153.193, read in conjunction, permit the kind of "as agreed" order at issue in this case in the narrow circumstance where such a severe restriction is necessary to protect the child's best interest. We further hold that legally sufficient evidence supported the terms of the trial court's order here.

14

C

Mother next argues that if a total denial of access serves the children's best interest, the trial court must terminate the parent–child relationship instead of creating a possessory conservatorship that amounts to an effective denial of access. Again, the trial court's order was not a denial of access. Even if it were, Mother's argument leads to the perverse result that a court, upon concluding that the kind of severe restriction imposed here is necessary to protect a child's best interest, must irrevocably terminate a parent's rights rather than restrict those rights and give the parent the opportunity to seek to increase her access rights in the future.

Requiring termination of parental rights rather than a conservatorship with severe access restrictions would place trial courts in an unimaginable bind. Such a harsh rule would force a trial court to either allow access to a child by a possessory conservator who may immediately endanger that child's physical or emotional wellbeing, or conversely, force the trial court to prematurely sever the parent–child relationship out of fear that immediate access may cause irreparable harm to the child. Such a proposition is antithetical to the purpose of visitation orders, which strive to balance the rights of parents with the importance of protecting children. *See* TEX. FAM. CODE § 153.001(a).

For the same reason, Mother's argument that an order that specifies "an amount of days" is preferable over an otherwise "completely unworkable" possession order is also unavailing.[8] Whether a set of broad, enforceable guidelines is preferable to an order granting discretion to the managing conservators requires a case-by-case basis determination of the child's best interest.

---

[8] For this proposition, Mother relies on *Pickens v. Pickens*, No. 12-13-00235-CV, 2014 WL 806358 (Tex. App.—Tyler Feb. 28, 2014, no pet.), but her reliance is misplaced. *Pickens* did not involve an "as agreed" order, nor did the *Pickens* court consider whether a complete denial of access was in the best interest of the child or permissible under Texas Family Code section 153.006(c). *See id.* at *1, *4.

15

Further, Mother's reliance on *In re A.P.S.*, 54 S.W.3d 493 (Tex. App.—Texarkana 2001, no pet.), is misplaced. In that case, Mother appealed the trial court's modification order that named her possessory conservator and awarded her possession of the children "at reaasonable [sic] times and places as determined by [Father]." *Id.* at 495. After reviewing the record, the court of appeals concluded that a "complete denial of access was not warranted and, from an examination of the order, was not intended by the trial court." *Id.* at 498. Further, Father offered no evidence to show good cause, as required by Texas Family Code section 153.006(c), to issue a nonspecific order deviating from the standard possession order. *Id.* As such, the court of appeals remanded with instructions to provide more specificity because without a showing of good cause or even the trial court's intent to give Father total discretion over Mother's access rights, the trial court was required to "fashion an order that specifically articulates the times and conditions" of Mother's access. *Id.* at 499. The court did not hold that possessory conservators are entitled to a certain level of access by virtue of *the appointment* alone. We decline to adopt Mother's view that the appointment of a parent as possessory conservator entitles the parent to a certain level of access without regard to what is in the child's best interest.

Here, the CASA representative and the children's guardian ad litem recommended termination of Mother's rights, but the Department recommended possessory conservatorship with access at the managing conservators' discretion. The Department's recommendation rested on the children's love for their Mother. Given the evidence, the trial court arguably could have terminated Mother's rights, but it chose to preserve the bond between Mother and her children while still protecting their physical and emotional needs.

16

We do not sit here to question why the trial court made the choice it did except to determine whether it was an abuse of discretion. *Jones v. Strayhorn*, 321 S.W.2d 290, 295 (Tex. 1959). The Family Code permits a restriction or limitation to the extent necessary to protect the children's best interest. *See* TEX. FAM. CODE § 153.193. It does not require termination when a severe restriction or limitation on access can also be in the best interest of the child while preserving the possibility that the parent and child may continue to have a relationship in the future. That is, so long as the trial court made the necessary findings that the restriction or limitation is in the children's best interest, the terms of the order are permissible.

**D**

Lastly, Mother urges that "as agreed" visitation orders are an impermissible delegation of judicial authority. Specifically, Mother suggests that a growing minority of courts of appeals take the position that placing complete discretion over parental access in the hands of a managing conservator results in orders unenforceable by contempt.[9] Mother argues that such "as agreed" orders leave the aggrieved parent with no recourse in the event the managing conservator arbitrarily and capriciously withholds access because the orders are unenforceable without objective standards. While Mother has not attempted to hold Aunt and Uncle in contempt, she argues she could not successfully enforce this order if Aunt and Uncle denied her access to her children. The Department disagrees, arguing that no disagreement among the Texas courts of appeals exists because the variation in the outcomes of conservatorship cases can be explained by what the trial court believed was in the best interest of the children in those cases.

---

[9] *See, e.g.*, *infra*, notes 11–14.

We have long held that "for a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him." *Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex. 1967) (collecting cases). Indeed, the power to enforce an order by contempt is "an essential element of judicial independence and authority." *Ex parte Gorena*, 595 S.W.2d 841, 845 (Tex. 1979) (citing *Ex parte Browne*, 543 S.W.2d 82, 86 (Tex. 1976)). But "[w]hether or not a decree is enforceable by contempt depends, not on statutory authority, but on the nature of the decree itself." *Id.* For example, in *Ex parte Slavin* we held that a Father's child-support obligations in a divorce decree were so indefinite that they could not be enforced by contempt. 412 S.W.2d at 45. We did not render the order void for vagueness, however. *Id.* Thus, while an order must be "clear, specific, and unambiguous" to be enforceable by contempt, *id.* at 44, it does not follow that every order less than that is invalid.

Applying the same logic to visitation orders, when the facts are so egregious so as to warrant a nonspecific order under which access to the children is in the sole discretion of the managing conservator, the nature of the "as agreed" visitation order is by definition nonspecific. *See* TEX. FAM. CODE §§ 153.006(c), .193. Stated another way, while the Family Code provides that conservators may be subject to contempt for disobeying a court order, *see id.* § 157.001(b), the Code does not require—nor have we ever held—that trial courts must issue orders that are always enforceable by contempt. Thus, whether a conservator may enforce an order by contempt depends on the contents of the order and the facts and circumstances of the particular case.[10]

---

[10] For example, in *Hale v. Hale*, No. 04-05-00314-CV, 2006 WL 166518, at *3 (Tex. App.—San Antonio Jan. 25, 2006, pet. denied), the Court remanded an order for greater specificity because though the "trial court concluded that it was in [the child's] best interest not to visit with her father until a therapist

18

In cases where the record indicates the trial court's intent was to issue an order imposing specific conditions or restrictions, the "judgment must state in clear and unambiguous terms what is required for the conservator to comply." *Hale,* 2006 WL 166518, at \*3 (citing *Ex parte Brister*, 801 S.W.2d 833, 834 (Tex. 1990)). But where, as here, the trial court intended to issue an "as agreed" order per Texas Family Code sections 153.006(c) and 153.193 due to the severity of Mother's conduct and impact on the children's physical and emotional wellbeing, the order was intentionally nonspecific. Because such an order is permitted by Texas Family Code sections 153.006(c) and 153.193, lack of specificity is not erroneous unless the trial court failed to make the necessary findings of good cause and best interest. *See* TEX. FAM. CODE §§ 153.006(c), .193.

Accordingly, we agree with the Department that the apparent disagreement among the courts of appeals is illusory and that the disparate outcomes in the cases on which Mother relies depend on a host of factors. For example, courts of appeals have required greater specificity in visitation orders because (1) the trial court did not make the best-interest finding needed to restrict or limit access;[11] (2) a showing of "good cause" to deviate from the standard possession order was lacking;[12] (3) the order, as written, effectively denied all access, but the record revealed the trial

---

recommended otherwise . . . [t]he order [did] not name a therapist or provide any guidelines to ensure that the best interests of the child are protected in these circumstances." *Id.*

[11] *In re J.Y.*, 528 S.W.3d 679, 690–91 (Tex. App.—Texarkana 2017, no pet.).

[12] *A.P.S.*, 54 S.W.3d at 498; *In re P.M.W.*, 559 S.W.3d 215, 222 n.4 (Tex. App.—Texarkana 2018, pet. denied).

court did not intend that result;[13] or (4) the trial court may have intended to severely restrict access, but the facts of the case did not rise to the level of an extreme circumstance.[14]

Finally, Mother is not without a remedy. If Mother, Aunt, and Uncle are unable to reach any agreement for access, Mother can move for a modification of the original order if the circumstances have materially or substantially changed and if a modification would be in the best interest of the children. *See* TEX. FAM. CODE § 156.101(1).

### III

In her second issue, Mother mounts both facial and as-applied constitutional challenges to section 262.201(o) of the Family Code.

When a governmental entity takes possession of a child without prior notice or a hearing under Texas Family Code section 262.101—as was done here—a court generally must hold a full adversary hearing within fourteen days. TEX. FAM. CODE § 262.201(a). At this hearing— colloquially known as a "Chapter 262 hearing"—the parents are informed that the court may temporarily restrict or terminate their parental rights unless they are willing and able to provide the child with a safe environment. *Id*. § 262.201(m). At the conclusion of the hearing, the court may issue temporary orders under chapter 105 of the Texas Family Code. *Id*. § 262.102(a); *see id.* § 105.001. While the Family Code generally entitles parents to notice before this adversary

---

[13] For example, in *In re J.S.P.*, 278 S.W.3d 414, 422–23 (Tex. App.—San Antonio 2008, no pet.), the Court remanded an order because the part pertaining to possession was "not specific enough to be enforceable." *Id.* at 423. The trial court fashioned an order requiring Father to participate in a transitory program led by a therapist, but the order did not contain a "reporting schedule or other deadline." *Id.* Without such a timeline, the Court held the order did not meet the standards of enforceability. *Id.* Thus, while the trial court's intent was to issue an order with guidelines for Father to follow, the language of the order missed the mark. *Id.*; *see also Hale*, 2006 WL 166518, at *2–3; *In re J.Y.*, 528 S.W.3d at 691.

[14] *Fish v. Lebrie*, No. 03-09-00387-CV, 2010 WL 5019411, at *10 (Tex. App.—Austin Dec. 10, 2010, no pet.).

20

hearing, *see id.* § 262.109(a), a trial court may issue ex parte temporary orders if a parent's whereabouts are unknown and the Department is unable to serve the parent with notice before the hearing takes place, *id.* § 262.201(o).

Mother argues that section 262.201(o) is facially unconstitutional because it deprives parents of procedural due process rights to notice before the Chapter 262 hearing. Mother argues that the provision can never be applied constitutionally because it always operates to deprive notice to transient parents who lack stable housing. Mother also argues the provision is unconstitutional as applied to her because she was not served with citation, either personally or by publication, before the trial court issued a temporary order to remove her children. The court of appeals, addressing only Mother's facial challenge, held the statute constitutional because "the statute's plain language is permissive, not mandatory." 607 S.W.3d at 409.

We do not reach the merits of the Mother's arguments, however, because the final order in the suit moots Mother's constitutional challenges to the temporary order rendered pursuant to section 262.201(o).[15]

A case is moot when a justiciable controversy between the parties ceases to exist or when the parties cease to have a "legally cognizable interest in the outcome." *State v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018) (quoting *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001)). Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests. *Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012). Any ruling on the merits of a moot issue constitutes an advisory opinion, which we lack jurisdiction to issue. *See* TEX. CONST.

---

[15] Courts may raise jurisdictional issues *sua sponte* for the first time on appeal. *See Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 916 (Tex. 2015) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993)).

art. II, § 1; *Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993).

Here, the Department filed its original petition on August 20, 2018, and the trial court issued temporary emergency orders the same day naming the Department temporary sole managing conservator. On September 12, the trial court conducted the Chapter 262 hearing on the emergency removal. The Department stated it could not locate Mother to serve her with citation prior to the hearing. The trial court in turn exercised jurisdiction pursuant to Texas Family Code section 262.201(o) and issued an ex parte order naming the Department temporary managing conservator. Mother's appointed counsel objected to the temporary order on the ground that Mother had not received citation. The court advised that Mother could move for reconsideration of the temporary order once she was located. After Mother was served, however, she did not seek reconsideration of the temporary order in the trial court, electing instead to seek mandamus relief in the court of appeals and this Court, which was denied. *In re Reina S.C.*, No. 04-18-00682-CV, 2018 WL 6331053, at *1 (Tex. App.—San Antonio Dec. 5, 2018, orig. proceeding [mand. denied]).

Mother again seeks review of the constitutionality of section 262.201(o)—the basis for the temporary order authorizing the emergency removal of her children—but the trial court has since rendered a final judgment regarding Mother's parental rights. As such, any action on the merits related to the prior temporary order would not affect Mother's rights or interests. *See Heckman*, 369 S.W.3d at 162; *In re E.R.W.*, 528 S.W.3d 251, 257 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding).

\* \* \*

We conclude that section 153.006(c) of the Texas Family Code permits trial courts to issue nonspecific visitation orders and that section 153.193 allows restrictions or limitations on a possessory conservator's access to the extent necessary to "protect the best interest of the child." Here, the trial court did not abuse its discretion in imposing a severe restriction on Mother's access rights where the evidence reveals it was in the best interest of her children. Further, the trial court's final judgment in this proceeding rendered Mother's complaints about the temporary orders moot.

Accordingly, the court of appeals' judgment is affirmed.

_____
John P. Devine
Justice

**OPINION DELIVERED: June 4, 2021**

23